Rule 23 order filed
December 4, 2009;
Motion to publish granted
January 19, 2010, corrected
February 9, 2010.

CONSOLIDATED NO. 5-08-0298

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| EVA LOVENE LEAVELL, d/b/a L & L SUPPLY COMPANY, | ) Appeal from the ) Circuit Court of ) White County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) Nos. 01-MR-4, 02-MR-8, 04-MR-4, ) 04-MR-5, & 04-L-2 |
| THE DEPARTMENT OF NATURAL RESOURCES, | ) ) Honorable ) David K. Frankland, |
| Defendant-Appellee. | ) Judge, presiding. |

_____

JUSTICE STEWART delivered the opinion of the court:

The plaintiff, Eva Lovene Leavell, doing business as L & L Supply Company, operated approximately 90 oil wells located in Crawford County, Edwards County, Hamilton County, Wayne County, and White County, Illinois. The defendant, the Illinois Department of Natural Resources (the Department), is charged with the duty of enforcing the Illinois Oil and Gas Act (the Act) (225 ILCS 725/1 *et seq.* (West 2000)) and the rules, regulations, and orders promulgated pursuant to the Act. 225 ILCS 725/3 (West 2000).

This consolidated appeal involves appeals from judgments in favor of the Department in five separate cases filed in the White County circuit court. Each of the five cases involved oil wells that had been operated by Leavell and that were found to be abandoned in various administrative hearings. In each case, Leavell raised constitutional and statutory issues concerning the notice that the Department had given her of the administrative hearings that were conducted to determine whether the wells were abandoned. For the following reasons, we affirm.

1

## I. Cause Nos. 01-MR-4, 02-MR-8, and 04-MR-5

All the cases in this consolidated appeal involve various administrative hearings that resulted in a finding that the wells Leavell operated were abandoned for various reasons. The Act requires oil wells to be plugged when they are abandoned, and it gives the Department the power to determine what constitutes an abandonment. 225 ILCS 725/19 (West 2000). Regulations established by the Department are codified in the Illinois Administrative Code (the Code). Section 240.1600 of Title 62 of the Code (62 Ill. Adm. Code §240.1600, amended at 25 Ill. Reg. 9100-01, eff. July 9, 2001) defines abandoned wells to include wells that have not produced for more than two years and also wells that are owned by a permittee who has failed to pay an annual well fee assessment. The Act authorizes the Department to conduct hearings and to order that wells be plugged if they are determined to be abandoned. 225 ILCS 725/6(1) (West 2000). Section 240.1610 of Title 62 of the Code (62 Ill. Adm. Code §240.1610, amended at 25 Ill. Reg. 9101-04, eff. July 9, 2001) establishes the rules for administrative hearings involving the determination of whether wells have been abandoned and should be plugged. Section 240.1610(b)(1) of Title 62 of the Code requires the Department to give the permittee written notice of these administrative hearings through personal service or by certified mail sent to the permittee's last known address. 62 Ill. Adm. Code §240.1610(b)(1), amended at 25 Ill. Reg. 9102, eff. July 9, 2001. The notice must be mailed at least 14 days prior to the scheduled hearing date. 62 Ill. Adm. Code §240.1610(b)(1), amended at 25 Ill. Reg. 9102, eff. July 9, 2001.

On January 31, 2001, the Department sent Leavell a notice that it intended to hold a hearing on February 14, 2001, to determine whether she had abandoned the wells she operated "due to cessation of operations for more than two (2) years (24 months)." The Department identified this proceeding as "Abandonment #AW-01-030." The notice of the hearing bears a certificate of service signed by the Department's legal counsel that certified

that the notice of the hearing had been mailed to Leavell by certified mail on January 31, 2001. The post office unsuccessfully attempted to deliver the notice of the hearing to Leavell on three occasions–February 3, 2001, February 22, 2001, and March 1, 2001. After the third attempt, the postal service marked the certified mailing as "unclaimed" and returned it to the Department. The Department then re-sent the notice to Leavell by regular mail on March 16, 2001.

Prior to receiving the return receipt for the certified mailing of the notice sent to Leavell, on February 14, 2001, the Department conducted the administrative hearing in Abandonment #AW-01-030 to determine whether the oil wells operated by Leavell were abandoned. The administrative hearing was attended only by the hearing officer and a representative of the Department. At the hearing, the Department produced the notice of hearing addressed to Leavell but did not produce the return receipt or other evidence that Leavell had received the notice of the hearing.

At the hearing, the Department maintained that Leavell had abandoned her oil wells due to nonproduction for more than two years and due to Leavell's failure to place the wells on temporary abandonment status. The Department requested a finding from the administrative hearing officer that the wells were abandoned and an order directing that the wells be plugged in accordance with the Act. The Department presented testimony and evidence to the hearing officer in support of its position. At the conclusion of the hearing, the hearing officer declared the wells to be abandoned. On March 19, 2001, the hearing officer submitted proposed findings of fact, conclusions of law, and recommendations. The hearing officer's proposed findings included the following: "Notice of this hearing was properly served upon Eva Lovene Leavell, d/b/a L & L Supply Company[,] by mailing a copy thereof, by certified mail, to the last known address of Eva Lovene Leavell, d/b/a L & L Supply Company." The director of the Department's Office of Mines and Minerals signed

3

a final administrative decision on March 19, 2001, declaring the wells to be abandoned and ordering Leavell to plug the wells within 30 days. The Department sent Leavell a copy of the final administrative order by certified mail on March 19, 2001.

On April 26, 2001, Leavell filed a complaint for the judicial review of the administrative decision. In re Abandonment of Wells Located in Illinois by Eva Lovene Leavell, d/b/a L & L Supply Company, Permittee #1031, No. 01-MR-4 (Cir. Ct. White Co.) (No. 01-MR-4). Leavell alleged in her complaint that she did not receive the notice of the administrative hearing and that she was unaware that the hearing would take place. Leavell's complaint was superceded by an amended complaint that alleged that the Department did not have jurisdiction to issue the final administrative decision because Leavell did not have proper notice of the administrative hearing and that the inadequate notice of the hearing denied her due process right to notice and an opportunity to be heard.

On November 3, 2001, the Department filed a motion to dismiss Leavell's amended complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2000)). The Department argued in its motion that Leavell failed to provide for the issuance of a summons within 35 days of the administrative decision, in accordance with section 3-103 of the Illinois Administrative Review Law (735 ILCS 5/3-103 (West 2000)). On February 22, 2002, the circuit court granted the Department's motion to dismiss without ruling on Leavell's due process argument, and Leavell appealed the circuit court's dismissal.

While that appeal was pending, on March 28, 2002, the Department sent Leavell another notice of another administrative hearing to inform her that the Department intended to hold an administrative hearing on April 16, 2002, to determine whether she had abandoned the same wells "due to failure to pay FY2002 annual well fees." The Department identified this proceeding as "Abandonment #AW-02-072." The notice of this hearing bears a certificate of service signed by the Department's legal counsel that certified that the notice

4

of the hearing had been mailed to Leavell by certified mail on March 28, 2002, to her last known address. On April 14, 2002, the post office marked the certified letter containing the notice of the hearing as "unclaimed" and returned it to the Department. The Department did not receive the returned, unclaimed notice of hearing until April 22, 2002, after the administrative hearing had taken place. The Department re-sent the notice by first-class mail on April 23, 2002.

The administrative hearing in Abandonment #AW-02-072 took place on April 16, 2002, and Leavell did not attend the hearing. On April 22, 2002, the Department entered a final administrative decision, finding that the wells were abandoned due to Leavell's failure to pay the annual well fees and ordering Leavell to plug the wells within 30 days from the date of the decision. On the same day, the Department's attorney sent Leavell a copy of the final decision to her last known address by certified mail. The post office marked the certified mailing of the administrative decision as "unclaimed" on May 12, 2002, and returned it to the Department. The Department received the unclaimed certified mailing on May 20, 2002. On May 21, 2002, the Department sent Leavell a copy of the administrative decision by first-class mail to the same address.

On June 18, 2002, Leavell filed a complaint for the judicial review of this second final administrative decision. In re Abandonment of Wells Located in Illinois by Eva Lovene Leavell, d/b/a L & L Supply Company, Permittee #1031, No. 02-MR-8 (Cir. Ct. White Co.) (No. 02-MR-8). Leavell alleged in her complaint that she again did not receive proper notice of the administrative hearing. Leavell alleged that the Department did not mail the notice of the hearing until April 29, 2002, seven days after the date of the final administrative decision, and did not mail her a copy of the administrative decision until May 21, 2002, after the expiration of her time to appeal.

On July 17, 2002, the Department filed a motion to dismiss the complaint in No. 02-

5

MR-8 pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2002)). In the motion to dismiss, the Department argued, in part, that Leavell failed to timely file the complaint for administrative review pursuant to section 3-103 of the Administrative Review Law (735 ILCS 5/3-103 (West 2002)). The Department argued that the final administrative decision was served on Leavell when it mailed the decision to Leavell by certified mail and that Leavell had 35 days from that day to file her complaint for administrative review.

On September 20, 2002, in No. 02-MR-8, the circuit court entered a final order that granted the Department's motion to dismiss and dismissed Leavell's complaint for administrative review with prejudice. Leavell did not file a notice of appeal within 30 days after the circuit court entered this order.

The record does not reflect anything further occurring in either No. 01-MR-4 or No. 02-MR-8 until August 14, 2003. On that date, in No. 01-MR-4, this court filed its opinion reversing the circuit court's judgment that dismissed Leavell's complaint for administrative review with prejudice. *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d 303 (2003). This court noted that the circuit court had not considered Leavell's claim that the Department failed to give her adequate notice of the administrative hearing. *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d at 308. We concluded that the authority of the Department to enter the final administrative decision depended on a resolution of disputed factual issues concerning whether the Department had properly served notice of the administrative hearing. *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d at 308. We remanded that case "to the circuit court to resolve the factual dispute and to determine whether the Department complied with the notice requirements and satisfied due process requirements." *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d at 308. No. 02-MR-8 was not a part of the *In re Abandonment of Wells Located in Illinois*

6

appeal or decision.

Two of the wells that Leavell owned in White County, Illinois, and that the Department found to be abandoned on April 22, 2002 (No. 02-MR-8) were known as the "Albert Schumaker Three" and the "Albert Schumaker One." On October 7, 2003, the Department transferred the ownership of these wells to the Republic Oil Company, Inc. (Republic Oil Company). On January 7, 2004, Leavell filed a complaint requesting that the circuit court void the transfer of the wells. Eva Lovene Leavell, d/b/a L & L Supply Company v. The Department of Natural Resources, No. 04-MR-5 (Cir. Ct. White Co.) (No. 04-MR-5).

On September 27, 2004, the parties appeared in court in No. 02-MR-8, and the court granted Leavell leave to file an amended complaint. The Department subsequently moved to dismiss the amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)), maintaining that Leavell had not pled sufficient facts to state a cause of action. The circuit court granted the Department's motion to dismiss and granted Leavell 30 days to file a second amended complaint.

On September 22, 2005, a representative from the Illinois Attorney General's office sent a letter to Leavell's attorney that stated that the Department was "willing to confess judgment in [No. 01-MR-4 and No. 02-MR-8]." The letter stated, "Please draft documents to effectuate this outcome for our review." On September 27, 2005, Leavell's attorney sent a letter to the Attorney General's office along with "proposed documents" related to the Department's "proposed confession of judgment." The letter stated: "I am forwarding same to my client for her approval, but I believe that these are substantially appropriate. Upon my client's approval of these documents I will inform you of same. Please advise on what if any changes that [the Department] would request." Leavell's attorney did not hear back from the Attorney General's office until October 11, 2005, when a representative from the office told

Leavell's attorney that the Department had changed its mind and was no longer willing to confess judgment.

On October 12, 2005, Leavell filed a motion in No. 01-MR-4 and in No. 02-MR-8 requesting the circuit court to enforce the Department's offer to confess judgment. Leavell alleged that the parties entered into a binding settlement agreement that should be enforced by the court. At the hearing on Leavell's motions, the assistant Attorney General representing the Department told the court that his letter to Leavell's attorney was a solicitation for an offer from Leavell and that after the Department had considered Leavell's proposed documents, it rejected them. On November 16, 2005, the circuit court denied Leavell's motions to enforce the alleged settlement. The court held that "there was no offer of settlement or acceptance definite with respect to material terms." The court noted that the correspondence by both parties was couched in terms of " 'proposed' confession and further 'review'[,] showing that no clear agreement had been reached or confirmed."

On October 17, 2005, Leavell filed a second amended complaint in No. 02-MR-8. On October 25, 2005, Leavell filed an amended complaint in No. 04-MR-5. The amended complaint consisted of four counts, and each count alleged that the Department had transferred the Albert Schumaker Three and the Albert Schumaker One wells to Republic Oil Company in violation of her ownership rights. Leavell requested the court to void the transfer and award her damages.

On August 28, 2006, the circuit court conducted a consolidated trial in No. 01-MR-4, No. 02-MR-8, and No. 04-MR-5.[1] At the trial, Leavell maintained that prior to October 7, 2003, she was the owner of the Albert Schumaker Three and the Albert Schumaker One wells, permit numbers 015854 and 010156. On October 7, 2003, the Department transferred the ownership of these wells to Republic Oil Company in transaction number 004146.

_____

[1]The consolidated trial also involved two other cases that we discuss below.

Leavell's son, Stanley Leavell, testified that he lived with his mother at 300 North Walnut, Carmi, Illinois, and had lived there with his parents for almost 40 years. He testified that neither he nor his parents received notice of the administrative hearing held on April 16, 2002, Abandonment #AW-02-072. According to Stanley, they did not receive the final administrative decision from that hearing until after their time to file for a review had expired. Stanley testified that over the previous 20 years, he had been responsible for approximately 400 wells and had previously testified in federal court as an expert witness concerning the value of leases. Over the Department's objection, Stanley testified that the Albert Schumaker One and Three wells were worth approximately $350,000 to $400,000. Stanley testified that the wells consistently produced seven barrels of oil per day and cost approximately $14 to $16 per day to operate. In addition, he believed that prior to the transfer to Republic Oil Company, there had been personal property located at the well sites worth approximately $75,000, including pumping units, motors, tank batteries, injection pumps, injection lines, flow lines, and disposal tubing. The Department objected to Stanley's testimony because he had not been disclosed as an opinion witness. The circuit court reserved a ruling on the Department's objection until the conclusion of the evidence.

Stanley testified that Leavell had not been able to operate her wells since the Department determined them to be abandoned in the administrative proceeding held in February of 2001, Abandonment #AW-01-030.

Leavell's husband, Daniel, testified that he had been involved in the oil business in various capacities since 1960. He testified that Leavell's wells in Crawford County produced an average of 40 barrels of oil per day and that the Albert Schumaker wells averaged about 7 barrels per day. Over the Department's objection, Daniel testified that the value of Leavell's leases in 2001 was $1.3 million. He valued the leases at the time of the trial to be approximately $3 million. Daniel testified that the value of all the equipment on all of

9

Leavell's leases was $6.6 million. Again, the Department objected on the ground that Leavell had not disclosed Daniel as an opinion witness.

Daniel testified that Republic Oil Company had drilled additional wells on the Albert Schumaker lease and was producing 90 barrels of oil per day. He testified that Leavell did not receive notice of the Abandonment #AW-01-030 administrative proceeding or the Abandonment #AW-02-072 administrative proceeding. Daniel testified that Leavell never answers the door at their home.

Leavell testified that she never signed a certified mail card in connection with an administrative hearing with the Department and was never personally served with any documents. She stated that if she had received notice of the hearings, she would have appeared. She testified that she was the owner and operator of the oil wells at issue but that her son, Stanley, took care of the day-to-day operations.

At the conclusion of the evidentiary hearing, the circuit court granted the parties the opportunity to file closing briefs. Prior to filing its closing brief, the Department filed a motion to strike the opinion testimony of Stanley and Daniel. In its motion to strike, the Department stated that one of the issues at the trial was the valuation of the wells at issue in support of Leavell's claim for monetary damages. The Department stated that Leavell had not disclosed Stanley or Daniel as an opinion witness and had not disclosed their opinions prior to the trial, in violation of the mandatory obligations of Illinois Supreme Court Rule 213(f) (177 Ill. 2d R. 213(f)).

On November 6, 2006, the circuit court entered an order granting the Department's motion to strike Stanley's and Daniel's opinion testimony. The circuit court agreed with the Department that Leavell had not properly disclosed Stanley and Daniel as opinion witnesses and struck their opinion testimony concerning the value of the leases. The court also noted that their testimony "was with questionable foundation as no documentation was provided

10

in discovery or at trial to support their opinions."

In April of 2007, Leavell filed her trial brief, and in May of 2007, the Department filed its trial brief. In its trial brief, the Department acknowledged that the administrative hearing that had taken place on February 14, 2001 (Abandonment #AW-01-030) "cannot and did not support the abandonment status of Leavell's wells in October 2003," when the Albert Schumaker wells were transferred to Republic Oil Company. Instead, the Department argued that it transferred the Albert Schumaker wells in reliance on the finding of abandonment for the nonpayment of fees in the Abandonment #AW-02-072 administrative proceeding. The Department noted that the complaint for administrative review of the Abandonment #AW-02-072 administrative proceeding (No. 02-MR-8) had been dismissed with prejudice and that Leavell had not timely appealed from that final order when it transferred the Albert Schumaker wells. The Department also argued that because the administrative decision in Abandonment #AW-02-072 was affirmed in No. 02-MR-8 when it was dismissed with prejudice, the administrative review of the Abandonment #AW-01-030 administrative proceeding in No. 01-MR-4 was moot.

On July 23, 2007, the circuit court entered its judgments in No. 01-MR-4, No. 02-MR-8, and No. 04-MR-5. In No. 02-MR-8, the circuit court ruled as follows:

"The court has considered the pleadings, briefs, exhibits admitted, case[]law, testimony[,] & arguments of counsel. Upon consideration of same, the court finds that the issue raised in the Complaint for Judicial Review was resolved on September 20, 2002[,] with the court's dismissal with prejudice of the same. Plaintiff did not appeal the decision–a final appealable decision. The court no longer had jurisdiction of the matter."

In No. 01-MR-4, the circuit court ruled as follows:

"The court finds that the issue of whether Defendant violated due process by

11

issuing a Final Administrative Decision in #AW-01-030 is moot. As pointed out by defendant, the Department found the wells to be abandoned in April 2002 in #AW-02-072 for nonpayment of fees. Plaintiff commenced a Judicial Review in [No.] 02-MR-8, White Co., IL[,] on June 18, 2002[,] which was dismissed with prejudice on September 20, 2002. Plaintiff chose not to appeal the decision. The dismissal with prejudice was a final appealable order. As such the court had no further jurisdiction [No.] 02-MR-8 [*sic*] over the matter and renders the issue in this case moot."

In No. 04-MR-5, the circuit court ruled as follows:

"In October 2003, when the Department transferred the Schumaker wells to Republic Oil Company, the Plaintiff's wells had (in April 2002) been found to be abandoned in #AW-02-072 for nonpayment of fees, and the administrative review action ([No.] 02-MR-8), challenging the Department's final order in #AW-02-072, had (in September 2002) been dismissed with prejudice and had not been appealed. The Court finds that the Department was justified in its reliance upon the finality of the Court's judgment in [No.] 02-MR-8 (dismissing the administrative review of its 2002 finding that the Plaintiff's wells were abandoned) when the Department approved Republic Oil's request to transfer the Schumaker wells. Therefore, the Plaintiff's request for declaratory judgment to void the Department's transfer of the Schumaker wells to Republic Oil Company in October 2003 is DENIED.

In addition to failing to prove any sanctionable conduct by the Department, the Plaintiff has failed to prove damages in any ascertainable amount for *** the transfer of the Schumaker wells. On November 6, 2006, the Court issued an Order which granted the Department's Motion to Strike Opinion Testimony and found that 'much of Dan and Stanley Leavell's testimony was with questionable foundation as no documentation was provided in discovery or at trial to support their opinions.' The

12

Court finds that the Plaintiff failed to prove any 'verifiable facts' as to the amount and value of any oil production and as to the condition and value of any well field equipment. Therefore, the arguments in the Plaintiff's Brief relating to any estimated or projected oil production, the value of such oil production, the condition and value of any oil production equipment, and all other matters of opinion or conclusion[] are rejected."

On appeal, Leavell raises several issues relevant to No. 01-MR-4, No. 02-MR-8, and No. 04-MR-5. The first issue Leavell raises is whether the circuit court erred in denying her motion to enforce the Department's settlement offer in No. 01-MR-4 and No. 02-MR-8.

As noted above, on September 22, 2005, a representative from the Illinois Attorney General's office sent a letter to Leavell's attorney that stated that the Department was "willing to confess judgment in [No. 01-MR-4 and No. 02-MR-8]." The letter requested Leavell's attorney to prepare some proposed documents for the Department's review. Leavell's attorney prepared the proposed documents and sent them to the Department in a letter that indicated that Leavell had to approve the documents and requested the Attorney General's office to "advise on what if any changes that [the Department] would request." The Department subsequently declined the proposed documents and told Leavell that it was no longer willing to confess judgment.

The circuit court held that there was no binding and enforceable settlement agreement reached between the parties. The court noted that the correspondence by both parties was couched in terms of " 'proposed' confession and further 'review'[,] showing that no clear agreement had been reached or confirmed." The court held that "there was no offer of settlement or acceptance definite with respect to material terms." We believe that the circuit court ruled correctly in denying Leavell's motion to enforce the alleged settlement.

A settlement agreement is in the nature of a contract and is governed by principles of

13

contract law. *Solar v. Weinberg*, 274 Ill. App. 3d 726, 731 (1995). Oral agreements are binding so long as there is an offer, an acceptance, and a meeting of the minds regarding the terms of the agreement. *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 146 (1997). For a contract to be enforceable, the material terms of the contract must be definite and certain. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 314 (1987). "[A] contract 'is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do.' " *Midland Hotel Corp.*, 118 Ill. 2d at 314 (quoting *Morey v. Hoffman*, 12 Ill. 2d 125, 131 (1957)). "An enforceable contract must include a meeting of the minds or mutual assent as to the terms of the contract." *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991). In the present case, the communications between the parties were preliminary communications about a "proposed" settlement, and no definite and certain agreement was ever entered into between the parties.

The Department cites *Martin v. Government Employees Insurance Co.*, 206 Ill. App. 3d 1031, 1036-39 (1990), for the proposition that a contract could not be formed by Leavell's acceptance when the Department explicitly reserved the right to review and approve Leavell's proposed documents. In *Martin*, the plaintiff brought a cause of action for the breach of an insurance contract against an insurance company. *Martin*, 206 Ill. App. 3d at 1032-33. The court held that there was no contract between the parties. *Martin*, 206 Ill. App. 3d at 1033. The plaintiff had filled out a form to receive a quote for automobile insurance from the insurance company. *Martin*, 206 Ill. App. 3d at 1033. The plaintiff sent the form to the insurance company, and the insurance company then sent the plaintiff a quotation sheet, an application, and a cover letter with instructions for completing the application process. *Martin*, 206 Ill. App. 3d at 1034. The plaintiff then assumed that he met the insurance company's underwriting requirements. *Martin*, 206 Ill. App. 3d at 1034. Approximately two

14

weeks after the plaintiff had sent in his check and application, his vehicle was stolen. The insurance company returned the check and application to the plaintiff and denied coverage. *Martin*, 206 Ill. App. 3d at 1034-35.

The appellate court held that there was no contractual agreement between the plaintiff and the insurance company because the insurance company reserved the right to review and approve the application materials before extending coverage. *Martin*, 206 Ill. App. 3d at 1036. Based on the language of the documents, the court concluded that the application filled out by the plaintiff was a request by the plaintiff for the insurance company to issue an insurance policy. *Martin*, 206 Ill. App. 3d at 1036-37. The language of the application stated that the insurance company would issue an insurance policy after "final approval." *Martin*, 206 Ill. App. 3d at 1037.

In the present case, the assistant Attorney General's letter to Leavell's attorney stated that the Department was "willing to confess judgment in [No. 01-MR-4 and No. 02-MR-8]." This letter was a request for an offer from Leavell; it was analogous to the application materials the insurance company sent to the plaintiff in *Martin*. The assistant Attorney General's letter was an invitation to Leavell to make an offer subject to the Department's "review." Leavell's attorney prepared "proposed documents" and sent them to the Attorney General's office. The Department, however, rejected the proposed documents just as the insurance company rejected the plaintiff's application in *Martin*. Based on these facts, the trial court ruled correctly in finding that there was no enforceable settlement agreement between the Department and Leavell.

Next, with respect to No. 02-MR-8, Leavell argues on appeal that the circuit court ruled incorrectly in determining that it lost jurisdiction 30 days after the September 20, 2002, dismissal with prejudice. Leavell argues that the September 20, 2002, written order that dismissed the case with prejudice was not a final and appealable order. Leavell's argument

15

is incorrect.

A final judgment is "a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit." *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982). The supreme court has "stated on many occasions that a judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *Flores*, 91 Ill. 2d at 112.

In No. 02-MR-8, the circuit court dismissed Leavell's complaint for administrative review with prejudice. Illinois Supreme Court Rule 273 states, "Unless the order of dismissal *** otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." 134 Ill. 2d R. 273. Accordingly, the circuit court's September 20, 2002, order that dismissed Leavell's action with prejudice was an adjudication upon the merits that ascertained and fixed absolutely and finally the rights of the parties in the lawsuit. The September 20, 2002, order was a final and appealable order. See *Jordan v. Civil Service Comm'n*, 246 Ill. App. 3d 1047, 1049 (1993) (an order dismissing the case with prejudice was a final and appealable order).

Since the order was final and appealable, the circuit court lost jurisdiction over the lawsuit 30 days after September 20, 2002. A trial court loses jurisdiction over a matter when (1) 30 days have passed following the entry of a final and appealable order concerning that matter and (2) during that time, neither party has taken any legally proper action to extend the 30-day period. *Bowers v. Village of Palatine*, 204 Ill. App. 3d 135, 137 (1990). The supreme court has held that after 30 days from the date that the circuit court enters its final order, the circuit court loses jurisdiction over the matters resolved in that order. *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 149-50 (1994). Accordingly, in the present case, the circuit

16

court ruled correctly in determining in No. 02-MR-8 that it no longer had jurisdiction 30 days after September 20, 2002. *Holwell v. Zenith Electronics Corp.*, 334 Ill. App. 3d 917, 922 (2002) ("After the expiration of that 30-day period, the trial court lacks the necessary jurisdiction to amend, modify, or vacate its judgment").

Leavell argues that the order dismissing the case with prejudice was not a final and appealable order because the circuit court did not enter a "judgment." Leavell cites Illinois Supreme Court Rule 272 (137 Ill. 2d R. 272), which states as follows:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge or if a circuit court rule requires the prevailing party to submit a draft order, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record."

Leavell argues that the circuit court's September 20, 2002, order dismissing the case with prejudice was not a written judgment and therefore was not final when it was entered because the circuit court did not enter a separate signed judgment. Leavell's argument is incorrect.

A judgment is the final determination of a court upon matters submitted to it in an action or proceeding and is the judicial act of the court. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 256 (2006). It is the circuit court's official decision with respect to the rights and obligations of the parties to a lawsuit. *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 398 (2004). In No. 02-MR-8, the September 20, 2002, order was the judgment of the circuit court. It was the judicial act of the court upon all the matters before it, and the order was the official decision with respect to all the rights and obligations

17

of the parties. The order was written and signed, and it became final when it was entered of record. There is no rule that requires the circuit court to use the term "judgment" in order for its decisions to become final and appealable. *Martin v. Marks*, 80 Ill. App. 3d 915, 919 (1980) (the order dismissing the plaintiff's complaint with prejudice was the court's final written judgment under Rule 272).

Leavell argues that even if a final judgment was entered on September 20, 2002, and the circuit court lost jurisdiction 30 days after that date, the circuit court was, nonetheless, revested with jurisdiction under the revestment doctrine. We disagree.

The revestment doctrine is an exception to the proposition of law that the circuit court cannot amend, modify, or vacate a judgment 30 days after it is entered. *People v. Kaeding*, 98 Ill. 2d 237, 241 (1983). Revestment is a "narrow" doctrine. *Kaeding*, 98 Ill. 2d at 240. "In order for the [revestment doctrine] to apply, the parties must actively participate without objection in proceedings which are inconsistent with the merits of the prior judgment." *Kaeding*, 98 Ill. 2d at 241. The rationale behind the revestment doctrine is that the party that benefited from the circuit court's final judgment waives the right to question the jurisdiction of the court by ignoring the judgment and retrying the case. *Ridgely v. Central Pipe Line Co.*, 409 Ill. 46, 50 (1951); *Wilkins v. Dellenback*, 149 Ill. App. 3d 549, 555 (1986). "[T]he conduct relied upon must be by the party benefiting from the dismissal order and upon the merits of the cause operating to nullify the order of dismissal ***." *Wilkins*, 149 Ill. App. 3d at 555. "Conduct which is inconsistent with the dismissal order is any which can be reasonably construed as an indication that the parties do not view the order as final and binding." *Gentile v. Hansen*, 131 Ill. App. 3d 250, 255 (1984).

Based on the record before us, we conclude that the Department's conduct indicated that it believed the September 20, 2002, order to be nothing less than a final and binding order.

18

In No. 01-MR-4, on April 6, 2004, the Department filed an answer to Leavell's complaint after our remand. In its answer, the Department invoked the final order in No. 02-MR-8 as an affirmative defense. The Department argued that even if Leavell prevailed in No. 01-MR-4, the wells at issue would still be determined to be abandoned because the judicial review in the separate No. 02-MR-8 had "been terminated." Accordingly, the Department concluded that Leavell's complaint in No. 01-MR-4 failed to state a claim upon which relief could be granted. On June 29, 2004, the Department filed a motion to dismiss Leavell's complaint in No. 01-MR-4, arguing that the claim was moot because of the circuit court's final order dismissing No. 02-MR-8 with prejudice.

In No. 02-MR-8, after the proceeding had been dismissed with prejudice on September 20, 2002, nothing further occurred in the proceeding for nearly two years until August 19, 2004, when Leavell filed a new complaint for judicial review. On September 27, 2004, after a hearing in court, the circuit court granted Leavell 14 days to file an amended complaint. On October 19, 2004, Leavell filed her amended complaint, and on November 4, 2004, the Department filed a motion to dismiss the amended complaint. The Department argued in its motion that the amended complaint did not state a cause of action because it contained the same allegations and claim that had been contained in the initial complaint that had been dismissed more than two years prior. On September 19, 2005, the circuit court granted the Department's motion to dismiss but granted Leavell 30 days to file a second amended complaint. In addition, the court granted Leavell "limited discovery." On October 17, 2005, Leavell filed her second amended complaint.

The court consolidated Leavell's five White County lawsuits against the Department for one trial. In the trial brief that it submitted following the consolidated trial, the Department argued that the circuit court did not have jurisdiction in No. 02-MR-8 because the September 20, 2002, order was a final and appealable order. The Department stated that

the circuit court reinstated No. 02-MR-8 over its objection on September 27, 2004, but that the circuit court no longer had jurisdiction over the subject matter.

Under these facts, we cannot conclude that the Department's conduct was inconsistent with the finality of the September 20, 2002, dismissal order. The Department did not waive or ignore the prior judgment but instead attempted to use it as a defense to any further proceedings on the issue of the abandonment of the wells in both No. 01-MR-4 and No. 02-MR-8. Under these circumstances, the narrow revestment doctrine does not apply. "It has been stated that the rationale behind the revestment doctrine is that the trial court considers the benefitting party to have ignored the judgment and started to retry the case ***." *People v. Price*, 364 Ill. App. 3d 543, 546 (2006). The circuit court did not believe that the Department ignored the September 20, 2002, dismissal order, and we agree. The record supports the circuit court's conclusion that "[w]hile [the Department] may have had no objections as to matters of procedure, [the Department] never surrendered or waived its contention that the matter was moot by virtue of the final and appealable order." We believe that the revestment doctrine is not applicable in the present case.

Leavell argues alternatively that the pleadings she filed in No. 02-MR-8 on August 19, 2004, should be characterized as pleadings filed pursuant to section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2004)). Section 2-1401(a) provides a statutory procedure for the vacatur of a final judgment older than 30 days. 735 ILCS 5/2-1401(a) (West 2004). The statute requires that a petition be supported by an affidavit or other appropriate showing of matters not of record. *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). It further provides that a petition must be filed not later than two years after the entry of the judgment, excluding the time during which the person seeking relief is under a legal disability or duress or the ground for relief is fraudulently concealed. *Vincent*, 226 Ill. 2d at 7. Relief under section 2-1401 is predicated upon proof, by a preponderance of the evidence,

20

of a meritorious claim or defense in the original action and of diligence in pursuing both the original action and the section 2-1401 petition. *Vincent*, 226 Ill. 2d at 7-8 (citing *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986)).

The first pleadings filed in No. 02-MR-8 after the dismissal-with-prejudice order were filed by Leavell on August 19, 2004, nearly two years after the entry of the dismissal order. On that day, Leavell filed an unverified complaint for judicial review and her response to the Department's affirmative defenses. Leavell did not invoke section 2-1401 anywhere in those pleadings. In addition, the pleadings do not meet any of the requirements for a section 2-1401 petition. The unverified pleadings were not supported by any affidavits or other matters not of record. The pleadings filed on August 19, 2004, did not make the allegation of due diligence required for relief. See *Matter v. Quesnell*, 133 Ill. App. 3d 388, 389 (1985) (citing *Schmidt v. Siegal Trading Co.*, 72 Ill. App. 3d 611 (1979)). In addition, the pleadings did not allege facts to establish " 'that through no fault or negligence of [her] own an error of fact or a valid defense or claim was not made to appear to the trial court at the time the challenged judgment, order[,] or decree was entered.' " *Schmidt*, 72 Ill. App. 3d at 614 (quoting *Mitchell v. Seidler*, 68 Ill. App. 3d 478, 482 (1979)).

The August 19, 2004, pleadings do not have the features of a new action to vacate the dismissal order. Instead, the pleadings merely raised the issues that had already been decided by the order dismissing No. 02-MR-8 with prejudice. There is nothing in the record that suggests Leavell asked the trial court to treat the pleadings as a section 2-1401 petition at the time she filed them. In fact, Leavell never asked the circuit court to characterize the August 19, 2004, pleadings as a section 2-1401 petition until August 21, 2007, three years after they had been filed, when she filed a motion to reconsider following the circuit court's ruling that it no longer had subject matter jurisdiction in the case. Under the circumstances, the circuit court did not err in refusing to characterize those pleadings as a motion under section 2-1401.

21

Accordingly, we agree with the circuit court's ruling in No. 02-MR-8 that it lost subject matter jurisdiction 30 days after it had entered the order dismissing Leavell's complaint with prejudice. The September 20, 2002, order was the final and appealable order of the circuit court that ascertained and fixed absolutely and finally the rights of the parties in the lawsuit. The circuit court lost its jurisdiction to amend, modify, or vacate the judgment, and since Leavell did not file a timely notice of appeal from the September 20, 2002, dismissal order, this court also lost jurisdiction to review the merits of that judgment. We therefore must affirm the circuit court's judgment in No. 02-MR-8.

In her appeal of the judgment in No. 01-MR-4, Leavell challenges the circuit court's determination that her complaint for judicial review of the final administrative order in the Abandonment #AW-01-030 administrative proceeding was moot. We agree with the circuit court that No. 01-MR-4 is now moot because the final order in No. 02-MR-8 made it impossible for the court's ruling in No. 01-MR-4 to have any practical effect with respect to the rights of the parties.

As noted above, in the Abandonment #AW-01-030 administrative proceeding, the Department found that Leavell had abandoned her wells by failing to produce them for more than two years. This finding is the subject matter in No. 01-MR-4. The trial court initially dismissed the complaint in No. 01-MR-4, but in 2003, we filed our opinion that reversed the circuit court's judgment. *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d 303 (2003). We remanded the case "to the circuit court to resolve the factual dispute and to determine whether the Department complied with the notice requirements and satisfied due process requirements." *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d at 308. However, No. 02-MR-8 was not factored into or considered in our decision.

No. 02-MR-8 concerned a different final administrative order in a separate administrative proceeding–Abandonment #AW-02-072. In that proceeding, the Department

22

found that Leavell had abandoned her wells for "failure to pay FY2002 annual well fees." Leavell's complaint for administrative review of the Abandonment #AW-02-072 administrative proceeding was dismissed with prejudice. The dismissal order operates as an adjudication upon the merits (134 Ill. 2d R. 273; *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 335-36 (1996)), and as we hold above, neither the circuit court nor this court has jurisdiction to address the merits of that dismissal. The same wells are the subject matter of both administrative proceedings–Abandonment #AW-01-030 and Abandonment #AW-02-072. Accordingly, since the administrative decision in the Abandonment #AW-02-072 administrative proceeding was affirmed upon the dismissal of Leavell's complaint for administrative review in No. 02-MR-8, the review of the Abandonment #AW-01-030 administrative decision in No. 01-MR-4 is now moot. Even if the circuit court vacated the administrative decision in Abandonment #AW-01-030, the wells would, nonetheless, still be considered abandoned because of the Abandonment #AW-02-072 administrative decision.

"An issue is moot if no actual controversy exists or where events occur which make it impossible for the court to grant effectual relief. *** The fact that a case is pending on appeal when the events which render an issue moot occur does not alter this conclusion." *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116 (1992). We agree with the circuit court that No. 01-MR-4 presents issues that are now moot. The wells would still be abandoned regardless of a judgment in favor of Leavell in No. 01-MR-4.

We next address Leavell's appeal of the final judgment in No. 04-MR-5. No. 04-MR-5 concerned two of the wells that Leavell operated in White County, Illinois, and that the Department had found to be abandoned in the Abandonment #AW-02-072 administrative proceeding (No. 02-MR-8). These wells were the Albert Schumaker Three and the Albert Schumaker One. On October 7, 2003, the Department transferred the ownership of these wells to the Republic Oil Company. Count I of Leavell's complaint filed in No. 04-MR-5

23

sought an order declaring the transfer of the Albert Schumaker wells to be void because she did not receive proper notice. In count II of the complaint, Leavell requested the court to declare the transfer void because it was premised on the administrative finding that the wells were "abandoned" but the administrative finding violated her due process rights. Counts III and IV of the complaint sought compensation for the transfer of the wells to Republic Oil Company.

As noted above, the circuit court denied Leavell relief in No. 04-MR-5, in part, because at the time the Department transferred the Albert Schumaker wells, the wells had been found to be abandoned in Abandonment #AW-02-072 for the nonpayment of fees and the administrative review of that finding (No. 02-MR-8) had been dismissed with prejudice and the dismissal had not been timely appealed. The circuit court found that the Department was justified in relying on the finality of the circuit court's judgment in No. 02-MR-8 when the Department approved Republic Oil Company's request for a transfer of the Albert Schumaker wells. Since we affirm the circuit court's judgment in No. 02-MR-8, we also affirm the circuit court's judgment in No. 04-MR-5.

The claims in No. 04-MR-5 are based on the same claims made in No. 02-MR-8, *i.e.*, that Leavell did not receive adequate notice of the Abandonment #AW-02-072 administrative proceeding and, therefore, the administrative finding that the wells were abandoned violated Leavell's due process rights. However, the dismissal with prejudice of No. 02-MR-8 operated as an adjudication upon the merits. 134 Ill. 2d R. 273. It operated as the final adjudication of Leavell's claim of a lack of notice, and the order was not timely appealed. Accordingly, under principles of *res judicata*, Leavell could not relitigate her claim of a lack of notice in a separate proceeding requesting the circuit court to declare the subsequent transfers void and seeking compensation.

The basic principles of the doctrine of *res judicata* have been summarized as follows:

24

"The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. [Citations.] The doctrine extends not only to what was actually decided in the original action[] but also to matters which could have been decided in that suit. [Citations.] For the doctrine of *res judicata* to apply, three requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies." *Rein*, 172 Ill. 2d at 334-35.

The first requirement for *res judicata* is met because the dismissal with prejudice in No. 02-MR-8 was a final judgment on the merits. "The doctrine prohibits not only those matters which were actually litigated and resolved in the prior suit[] but also any matter which might have been raised in that suit to defeat or sustain the claim or demand." *Rein*, 172 Ill. 2d at 336. The doctrine of *res judicata* applies to constitutional claims (*People v. Bailey*, 141 Ill. App. 3d 1090, 1097 (1986)), and it is as relevant to the administrative process as it is to the judicial (*Osborne v. Kelly*, 207 Ill. App. 3d 488, 491 (1991)).

With respect to the second requirement of the doctrine, the cause of action for the purposes of *res judicata* is defined by the facts that give a plaintiff a right to relief. *Rein,* 172 Ill. 2d at 338. In the present case, both No. 02-MR-8 and No. 04-MR-5 were based on Leavell's claim that she did not receive adequate notice of the Abandonment #AW-02-072 administrative proceeding that found her wells abandoned for her failure to pay the annual well fees. With respect to the third requirement, the parties in both proceedings are identical.

"Simply stated, *res judicata* prevents a party from taking two bites out of the same apple." *Arvia v. Madigan*, 209 Ill. 2d 520, 534 (2004). Leavell had the opportunity to litigate her claim of a lack of notice when she filed her complaint for administrative review. Once

25

30 days passed from the date the circuit court dismissed her complaint for administrative review with prejudice, the circuit court lost subject matter jurisdiction over the claim, and the dismissal order operated as the final adjudication on the merits that ascertained and fixed absolutely and finally the rights of the parties in the lawsuit. Leavell is precluded from relitigating issues relating to her claim of a lack of notice of the Abandonment #AW-02-072 administrative proceeding under the *res judicata* doctrine.

The administrative order finding the wells to have been abandoned was affirmed by the final order of the circuit court that was entered on September 20, 2002. At that point, the Department was justified in relying on the final administrative decision that found the wells abandoned. See *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711, 717 (2002) ("Both *res judicata* and collateral estoppel apply to administrative decisions that are adjudicatory, judicial, or quasi-judicial in nature").

Once it was finally determined that the wells were abandoned, Leavell had 30 days to plug the wells. 62 Ill. Adm. Code §240.1610(c), amended at 25 Ill. Reg. 9104, eff. July 9, 2001. Since Leavell did not plug the wells, they had to be placed into the Department's Plugging and Restoration Fund program (the PRF program) and were subject to the plugging requirements under that program. 62 Ill. Adm. Code §240.1610(d), amended at 25 Ill. Reg. 9104, eff. July 9, 2001; 62 Ill. Adm. Code §240.1740, amended at 19 Ill. Reg. 11063, eff. July 14, 1995. Once the wells were placed in the PRF program, the Department had the authority to dispose of the well equipment in a commercially reasonable manner. 225 ILCS 725/19.6(j) (West 2006). In addition, the Department has the sole discretion to approve a petition to transfer a well in the PRF program when it receives a proper petition for a transfer. 62 Ill. Adm. Code §240.1465(e), added at 22 Ill. Reg. 22376, eff. December 14, 1998.

Accordingly, we affirm the circuit court's judgment denying Leavell relief in No. 04-MR-5. We cannot determine from the record why Leavell did not appeal the September 20,

2002, order dismissing the complaint for administrative review with prejudice in No. 02-MR-8. For whatever reason, she did not appeal, and we are now required to give effect to the final administrative decision finding that the wells were abandoned. Under these circumstances, the Department properly placed the wells into the PRF program and properly transferred the wells pursuant to the above authority the Department has in managing the PRF program.

Since we affirm the circuit court's finding that the Department was justified in transferring the Albert Schumaker wells pursuant to the provisions of the PRF program, we need not address the circuit court's finding that Leavell failed to prove her damages for the transfer.

Leavell asserts that the transfer of the wells constituted a "taking" under the fifth amendment to the United States Constitution (U.S. Const., amend. V). The fifth amendment of the United States Constitution, as well as the Illinois Constitution, prohibits the taking of private property for a public purpose without the payment of just compensation. U.S. Const., amend. V; Ill. Const. 1970, art. I, §15. Leavell, however, does not develop this argument or cite any case law applying the takings clause of the fifth amendment. See *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1098-99 (2007) ("It is well settled that '[a] reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented ([210 Ill. 2d R. 341(h)(7)]), and it is not a repository into which an appellant may foist the burden of argument and research' " (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993))).

Nonetheless, Leavell's argument under the takings clause is unconvincing. The State, pursuant to its inherent police powers, may regulate businesses for the protection of the public health, safety, and welfare. *People v. Johnson*, 68 Ill. 2d 441, 447 (1977). "[A]n exercise of police power to prevent a property owner from using his property so as to create

27

a nuisance or a risk of harm to others is not a 'taking' in the constitutional sense." *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 130 (2004) (citing *Lucas v. South Carolina Costal Council*, 505 U.S. 1003, 1030, 120 L. Ed. 2d 798, 822, 112 S. Ct. 2886, 2901 (1992)). Permitting an abandoned well to remain unplugged creates a continuing public nuisance. *People v. Jones*, 329 Ill. App. 503, 507 (1946). The Department's regulations concerning the PRF program promote the protection of the public health, safety, and welfare by providing the procedure for plugging abandoned wells when the owner has not fulfilled her obligation to plug the wells or, alternatively, by providing the Department with the ability to approve a transfer of the wells to another permittee. Leavell did not establish that she was entitled to compensation under the takings clause of the fifth amendment.

We affirm the circuit court's judgments entered in No. 01-MR-4, No. 02-MR-8, and No. 04-MR-5.

## II. Cause Nos. 04-MR-4 and 04-L-2

On January 7, 2004, Leavell filed a complaint against the Department (No. 04-MR-4), alleging that the Department plugged the following wells that she owned in Crawford, White, Hamilton, and Edwards Counties, Illinois: Davis-Dart #2, Ella M. Smith #2, Lamar #B-2, C. Shew #1, C. Shew #2, Shew #LW-1, Shew #3, and Gerald Shew #5. Leavell maintained in her complaint that the wells were plugged without proper notice and the opportunity to be heard. Leavell requested the circuit court to declare the section of the administrative code concerning the plugging of abandoned wells to be unconstitutional.

On January 9, 2004, Leavell filed another complaint against the Department (No. 04-L-2), alleging that the Department plugged "the Shew, Davis[,] and Smith wells" and the Lamar #B-2 well without providing her with proper notice and an opportunity to be heard. In addition to asking the circuit court to declare that the plugging had been done in violation of her constitutional rights, Leavell also asked the circuit court for a judgment against the

28

Department in the amount of "$360,000 in damages for the loss of the surface and sub[]surface equipment," plus attorney fees and costs. Leavell also sought a declaration that she did not owe the Department for plugging costs.

As noted above, the circuit court conducted a consolidated trial on August 28, 2006. At the trial, the Department established that the wells at issue in No. 04-MR-4 and in No. 04-L-2 had been plugged prior to January of 2001. The Department presented evidence that an administrative hearing concerning the abandonment of the wells took place on February 10, 2000, that it sent a notice of that administrative hearing to Leavell by certified mail at her last known address, and that it received a signed return receipt evidencing the delivery of the notice prior to the hearing. In addition, the Department presented court records that established that Leavell's ownership in one of the wells at issue, the Ella M. Smith #2, had been terminated by an order of the Hamilton County circuit court in February 1993.

On July 23, 2007, the circuit court entered its final judgments that denied Leavell's request for relief in both No. 04-MR-4 and No. 04-L-2. The circuit court ruled as follows:

"1.     The Department did not violate the Due Process requirements for notice and opportunity to be heard at the abandonment hearings preceding the plugging of the Plaintiff's oil wells. The Davis-Dart #2, Ella M. Smith #2, Shew #1, Shew #2, Shew #LW-1, Shew #3[,] and Gerald Shew #5 wells were plugged after a hearing on February 10, 2000, in the administrative proceeding entitled [']Abandonment #AW-00-037.['] Documents show that the notice of hearing was sent to Leavell by certified mail on January 24, 2000, and an agent of Leavell apparently executed the receipt of the notice of hearing, which was admitted into evidence as a business record. This Court finds that, pursuant to *Leavell v. Dep't of Natural Res. (In re Leavell)*, 343 Ill. App. 3d 303, 308 (5th Dist. 2003), if postal records confirm L & L received the notice that was mailed, then the notice was sufficient. Moreover, no wells were plugged

29

after January 2001, prior to the abandonment proceedings in #AW-01-030 and #AW-02-072 (the respective subjects of the administrative review actions in [No.] 01-MR-4 and [No.] 02-MR-8). The Plaintiff's request for declaratory judgment for the avoidance of reimbursement to the Department of the plugging costs for the Lamar, Shew, Davis, and Smith wells is DENIED.

2. The Plaintiff's interest in the Ella M. Smith #2 had been terminated by order of the Hamilton County Circuit Court in February 1993. This Court finds that the Plaintiff pleaded claims premised upon ownership of the Smith well when there are indications she knew or should have known that her interest had been terminated by court order. Supreme Court Rule 137 provides that both the parties and the attorneys have an affirmative duty to conduct a reasonable inquiry before filing an action, pleading, or other paper [and] to ensure that factual allegations are well-grounded[] and that the failure to make such an inquiry could subject them to sanctions. However, this Court does not find that Plaintiff's sworn verification of the various complaints alleging ownership of the Smith well rises to the level of requiring Rule 137 sanctions relating to this issue."

We have reviewed the record of the proceedings, and the circuit court's findings are supported by the evidence presented at the trial. The record supports the conclusion that the Department conducted an administrative hearing on February 10, 2000, at which time the wells at issue in No. 04-MR-4 and No. 04-L-2 were determined to be abandoned. The Department introduced into evidence the signed return receipt as evidence that the notice of the February 10, 2000, administrative hearing had been sent to Leavell by certified mail on January 24, 2000. Although Leavell denied signing the receipt, the circuit court found that an agent of Leavell executed the receipt for the notice of the hearing. This finding by the circuit court was not against the manifest weight of the evidence. See *Addison Insurance Co.*

*v. Fay*, 232 Ill. 2d 446, 452 (2009) (a reviewing court should overturn factual findings only if they are against the manifest weight of the evidence).

The Department's regulations required Leavell to annually verify her current address. See 62 Ill. Adm. Code §240.1710, amended at 21 Ill. Reg. 7273-74, eff. June 3, 1997. The evidence at the trial established that the Department sent the notice of the administrative hearing to Leavell by certified mail to her verified address: 300 S. Walnut, Carmi, IL 62821. The evidence presented at the trial further established that Leavell resided at this address at the time the Department sent the notice by certified mail, along with her husband and her son, who were also actively involved with the operation of the oil wells. The Department's notice complied with the notice requirements contained in section 240.1610 of Title 62 of the Code (62 Ill. Adm. Code §240.1610, amended at 25 Ill. Reg. 9101-04, eff. July 9, 2001), and the notice was reasonably calculated under all the circumstances to apprise Leavell of the administrative proceeding. Under the principles of due process, notice must be reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 432 (1990). The Department's notice of the Abandonment #AW-00-037 administrative proceeding complied with statutory and due process requirements.

In addition, Leavell's argument that the return receipt was improperly admitted into evidence is not convincing. *Finik v. Department of Employment Security*, 171 Ill. App. 3d 125, 131 (1988) ("[A] mailing may be proved by evidence of an office custom together with corroborating circumstances showing that the custom was followed in the particular instance"). The circuit court's finding that Leavell received adequate notice and an opportunity to be heard in the Abandonment #AW-00-037 administrative proceeding was not against the manifest weight of the evidence, and the circuit court ruled correctly in denying Leavell relief in No. 04-MR-4 and No. 04-L-2.

Leavell argues that regardless of the signed certified mail receipt, the circuit court's judgment was, nonetheless, incorrect because the notice requirements contained in section 240.1610 of Title 62 of the Code (62 Ill. Adm. Code §240.1610, amended at 25 Ill. Reg. 9101-04, eff. July 9, 2001) do not provide sufficient notice under due process standards. We disagree. In *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490, 99 L. Ed. 2d 565, 578, 108 S. Ct. 1340, 1347 (1988), the Supreme Court stated, "We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." In the present case, the Department sent the notice of the administrative hearing by certified mail to Leavell's verified address as required by the regulations governing notice. After receiving the return receipt, the Department had no reason to suspect that Leavell had not been notified. Under these facts, the notice satisfied due process requirements. See *People ex rel. Devine v. $30,700.00 United States Currency*, 199 Ill. 2d 142, 160-62 (2002) (a notice sent to the claimant's home address by certified mail to apprise her of pending forfeiture proceedings was sufficient to satisfy procedural due process, even if she never received the mailing, absent any indication that the State mailed the notice to an incorrect address).

With respect to the Lamar #B-2 well, the evidence at the trial established that the well was a leaking well and, therefore, was the subject of an emergency administrative hearing known as "#LW-94-02." The evidence in the record established that the Department sent notice of the hearing in #LW-94-02 on February 26, 1994, by certified mail with a return receipt that was signed by Leavell. With respect to the Ella M. Smith #2 well, the circuit court correctly ruled that Leavell was not entitled to relief because the Hamilton County circuit court had terminated her interest in that well in February 1993. Smith v. Leavell, No. 92-CH-12 (Cir. Ct. Hamilton Co.).

Because we affirm the circuit court's judgments on the issue of liability, we need not

address the circuit court's rulings with respect to damages.

III. Leavell's Motion for Mistrial and Recusal or Mistrial and Disqualification

Leavell's final argument is that the circuit court erred in denying her motion to disqualify Judge David K. Frankland and to declare a mistrial. As noted above, on July 23, 2007, the circuit court entered judgments in favor of the Department in each of Leavell's five lawsuits. Almost eight months later, on April 18, 2008, Leavell filed motions in all five cases requesting a mistrial and the removal of Judge Frankland. Leavell requested the circuit court to vacate all the orders that had been entered since the beginning of the consolidated trial.

Leavell's motion alleged that at the time of the consolidated trial there was a separate case pending against her in Crawford County, Illinois–Nye v. Leavell, No. 05-CH-15 (Cir. Ct. Crawford Co.). That case was a lawsuit brought against Leavell for the cancellation of a lease called the Stantz oil lease. One of Leavell's primary defenses in that case was that the administrative orders involved in No. 01-MR-4 and in No. 02-MR-8 prohibited her from operating the Stantz lease. Leavell argued that while the outcomes of the cases were not "inexorably linked," they were related. Leavell alleged in her motion that Judge Frankland should have recused himself or should be disqualified from the five White County cases because in 1975, prior to going on the bench, Judge Frankland had performed title work on the Stantz lease for a prior owner of that lease.

On May 29, 2008, Judge Thomas H. Sutton presided over a hearing on Leavell's motion for a mistrial and for the disqualification of Judge Frankland. In denying Leavell's motion, Judge Sutton noted that none of Leavell's lawsuits raised any issues with respect to the underlying oil and gas leases. In each of the lawsuits, the Department admitted that Leavell was the rightful owner or permittee of the leases. Judge Sutton concluded that the ownership and title of the leases were not at issue before Judge Frankland and that the chain

33

of title of the Stantz lease had nothing to do with any of the five cases. Accordingly, Judge Sutton denied Leavell's motions to disqualify Judge Frankland. On appeal, Leavell argues that the circuit court abused its discretion in denying her motions.

"When reviewing a trial judge's recusal decision, we must determine whether the decision was an abuse of the judge's discretion." *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 175 (2008). Pursuant to Rule 63(C) of the Illinois Code of Judicial Conduct (210 Ill. 2d R. 63(C)), a judge is required to recuse himself where his impartiality might reasonably be questioned. "This test mandates disqualification when a reasonable person might question the judge's ability to rule impartially." *Barth*, 228 Ill. 2d at 176. The Court of Appeals for the Seventh Circuit set forth a test for determining an appearance of partiality, in *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985): whether an objective, disinterested observer fully informed of the relevant facts would entertain a significant doubt that the judge in question was impartial.

In the present case, Judge Sutton did not abuse his discretion in denying Leavell's motion for a mistrial and to disqualify Judge Frankland. At best, the only connection that Leavell established with the cases was that Judge Frankland had prepared a document that appears in the Stantz lease's chain of title. We agree with Judge Sutton that none of the documents in any of the leases' chains of title are disputed or at issue. Leavell utterly failed to show that Judge Frankland's impartiality in any of the cases involved in the present appeal might reasonably be questioned.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.


Affirmed.


CHAPMAN and WEXSTTEN, JJ., concur.

34

CONSOLIDATED NO. 5-08-0298

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| EVA LOVENE LEAVELL, d/b/a<br>L & L SUPPLY COMPANY, | ) Appeal from the<br>) Circuit Court of<br>) White County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) Nos. 01-MR-4, 02-MR-8, 04-MR-4,<br>) 04-MR-5, & 04-L-2 |
| THE DEPARTMENT OF<br>NATURAL RESOURCES, | )<br>) Honorable |
| | ) David K. Frankland, |
| Defendant-Appellee. | ) Judge, presiding. |

**Rule 23 Order Filed:**   December 4, 2009
**Motion to Publish Granted:**   January 19, 2010
**Opinion Filed**:   January 19, 2010

**Justices**:   Honorable Bruce D. Stewart, J.

Honorable Melissa A. Chapman, J., and
Honorable James M. Wexstten, J.,
Concur

**Attorney
for
Appellant**   Thomas G. Maag, Wendler Law, P.C., 900 Hillsboro, Suite 10, Edwardsville, IL
62025

**Attorneys
for
Appellee**   Lisa Madigan, Attorney General of Illinois, Michael A. Scodro, Solicitor General,
Mary E. Welsh, Assistant Attorney General, 100 West Randolph Street, 12th Floor,
Chicago, IL 60601